# IN THE UNITED STATES COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA EDDY<br>9790 Tollgate Road S.W.<br>Pataskala, Ohio 43062 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| J&D HOME IMPROVEMENT, INC.<br>c/o Thomas J. Johnston<br>13659 E. Main Street<br>Reynoldsburg, Ohio 43068 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| -and- | )<br>) | |
| BASEMENT DOCTOR OF CENTRAL<br>OHIO, LLC<br>c/o Kenneth Ludwig<br>P.O. Box 3958<br>Mansfield, Ohio 44907 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| PAT CLEMENS<br>13659 E. Main Street<br>Reynoldsburg, Ohio 43068 | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff, Christina Eddy, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## **PARTIES**

1. Eddy is a resident of the city of Pataskala, Licking County, state of Ohio.

2. Defendant J&D Home Improvement, Inc. ("J&D") is a domestic corporation with its principal place of business located at 13659 E. Main St., Reynoldsburg, OH 43068.



3. J&D is and was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C §2000e, *et seq*, 42 U.S.C §12111, *et seq.*, 29 CFR § 825, *et seq.*, and R.C. § 4112.02.

4. Defendant Basement Doctor of Central Ohio, LLC ("Basement Doctor") is a domestic limited liability company with its principal place of business located at 13659 E. Main St., Reynoldsburg, OH 43068.

5. Basement Doctor is and was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C §2000e, *et seq*, 42 U.S.C §12111, *et seq.*, 29 CFR § 825, *et seq.*, and R.C. § 4112.02.

6. Upon information and belief, Defendant Pat Clemens is a resident of the State of Ohio.

7. Clemens is and was at all times hereinafter mentioned a supervisor for The Basement Doctor.

8. At all times referenced herein, Clemens acted directly or indirectly in the interest of The Basement Doctor and/or within the scope of her employment with The Basement Doctor.

9. At all times referenced herein, Clemens supervised and/or controlled Eddy's employment with The Basement Doctor.

10. Clemens is and was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C §2000e, *et seq*, 42 U.S.C §12111, *et seq.*, 29 CFR § 825, *et seq.*, and R.C. § 4112.02.

## JURISDICTION & VENUE

11. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. § 1331 in that Eddy is alleging, among other claims, a federal law claim arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C §12101, *et seq*.



The Employee's Attorney.™

12. Venue is properly placed in the United States District Court for the Southern District of Ohio, Eastern Division, because it is the district court for the district, division, and county in which the Defendants operate and conduct business, and/or the district, division, and county in which a substantial part of the events or omissions giving rise to Eddy's claims occurred.

13. On November 16, 2016, Eddy filed a Complaint for Damages and Injunctive Relief against Defendants in Franklin County Common Pleas Court (Case No. 16CV010926), alleging Worker's Compensation Retaliation, Wrongful Termination in Violation of Public Policy, and Intentional Infliction of Emotional Distress ("Franklin County Action").

14. On February 28, 2017, Eddy filed a Notice of Dismissal Without Prejudice, dismissing the Franklin County Action.

15. Eddy has commenced this action within one year of her dismissal of the Franklin County Action, and thus, pursuant to R.C. § 2305.19, may bring the within action, alleging those same claims from the Franklin County Action.

16. Prior to instituting this action, Eddy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2017-00651, alleging that Defendants had terminated her because of her association with someone who had an actual or perceived disability.

17. Eddy was mailed her Notice of Right to Sue from the EEOC on September 23, 2017.

18. A true and accurate copy of Eddy's Notice of Right to Sue is attached hereto as Exhibit 1 and incorporated by reference.

19. Eddy has properly exhausted her administrative remedies pursuant to 29 U.S.C. §626(e).

The Employee's Attorney.™ 

20. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

21. Eddy is a former employee of The Basement Doctor.

22. On or about May 18, 2012, Eddy was hired by The Basement Doctor as a team lead.

23. On or about September 1, 2015, Eddy applied internally for a position as Call Center/AMS Manager.

24. On or about September 18, 2015, Eddy was promoted to Call Center/AMS Manager.

25. Eddy's responsibilities included, but were not limited to, setting weekly, monthly, and quarterly goals, training staff, monitoring the schedule, preparing bonuses for distribution, and contacting customers to schedule appointments.

26. Upon information and belief, Eddy was the only person to ever serve as Call Center/AMS Manager.

27. On or about October 5, 2015, Eddy's husband, Philip, who was also employed by The Basement Doctor, injured his back while at work.

28. Eddy's husband eventually filed a worker's compensation claim with the Ohio Bureau of Worker's Compensation and was assigned Claim #: 15-348914 ("WC Claim").

29. Eddy's husband is still undergoing treatment pursuant to the WC Claim.

30. In or around February 2016, Sarah Witt, a Human Resources professional at The Basement Doctor, informed Eddy that she needed to switch her insurance.

31. According to Witt, the switch was necessary to reflect that Eddy was now responsible for her husband's health insurance.



32. Soon after requiring Eddy to switch her insurance for herself and her husband, Eddy was demoted to a team lead position.

33. The demotion led to a decrease in pay from $19.19 per hour to $16.00 per hour.

34. The demotion caused financial strain and hardship to Eddy.

35. Defendants wanted to terminate Eddy after Eddy switched her insurance for herself and her husband.

36. Defendants could not terminate Eddy, however, because Eddy had a contract limiting any change to her position to a demotion to team lead.

37. Thus, Defendants began to look for ways to terminate Eddy after she changed her insurance for herself and her husband.

38. On or about April 29, 2016, Eddy experienced technical difficulties with the phone system.

39. Although Eddy was supposed to serve as back-up, she was receiving all the incoming calls.

40. Later, Eddy learned that Defendants had reprogrammed the call system so that Eddy would receive all the incoming calls.

41. Defendants did this in an effort to affect Eddy's performance.

42. Defendants wanted to affect Eddy's performance so it would be easier to terminate her.

43. On or about May 11, 2016, Philip's surgeon submitted a C-9 request for medical service with the Bureau of Worker's Compensation.

44. Philip's surgery was scheduled for July 1, 2016.

45. On or about May 20, 2016, Philip's surgery was approved by the Bureau of Worker's Compensation.

46. On or about May 20, 2016, on the same day surgery was approved by the Bureau of Worker's Compensation, Defendants terminated Eddy's employment.

The Employee's Attorney.™ 

47. Eddy was terminated in retaliation for her husband filing the WC Claim.

48. Eddy was terminated because Defendants did not want to cover her husband's approved surgery under the WC Claim.

49. As a result of suffering from back injuries sustained at work, Philip is and was disabled within the meaning of 42 U.S.C §12101, *et seq.* and R.C. § 4112.01(A)(13).

50. Defendants were aware of Philip's disability and/or perceived Philip as disabled.

51. Despite Philip's actual or perceived disabling condition, Eddy was able to perform the essential functions of her job.

52. Defendants terminated Eddy's employment because her husband was disabled and/or because filed for Worker's Compensation benefits.

53. Eddy was actually terminated, at least in part, due to her husband's actual or perceived disability and/or in retaliation for her husband filing a claim for Worker's Compensation benefits.

54. Defendants' purported reason for terminating Eddy's employment is pretext for discrimination and retaliation.

55. As a result of being wrongfully terminated, Eddy has suffered severe emotional distress, anxiety, and depression.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101**

56. Eddy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

57. Defendants were aware that Philip had disabilities due to back injuries he suffered at work.

58. Defendants were aware that Philip was disabled under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").

59. Due to Philip's disabilities, Defendants perceived that Philip was disabled under the ADA.



The Employee's Attorney.™

60. Philip's disabilities substantially impaired one or more major life activities under the ADA.

61. Despite his disabling conditions, Philip was fully competent and qualified for his position.

62. Despite Philip's disabling condition, Eddy was still able to perform the essential functions of her job.

63. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability. It is also unlawful to discriminate against an employee of the basis of their spouse's disability.

64. Defendants violated the ADA by terminating Eddy because of her husband's actual and/or perceived disabilities.

65. As a direct and proximate cause of the Defendants' conduct, Eddy has suffered and will continue to suffer damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, ET SEQ.**

66. Eddy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

67. Defendants were aware that Philip had disabilities due to back injuries he suffered at work.

68. Defendants were aware that Philip was disabled under R.C. § 4112.02.

69. Due to Philip's disabilities, Defendants perceived that Philip was disabled under Ohio law.

70. Philip's disabilities substantially impaired one or more major life activities.

71. Despite his disabling conditions, Philip was fully competent and qualified for his position.

72. Despite Philip's disabling condition, Eddy was still able to perform the essential functions of her job.



73. Ohio R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability. It is also unlawful to discriminate against an employee of the basis of their spouse's disability.

74. Defendants violated Ohio law by terminating Eddy because of her husband's actual and/or perceived disabilities.

75. As a direct and proximate cause of the Defendants' conduct, Eddy has suffered and will continue to suffer damages.

### COUNT III: WORKER'S COMPENSATION RETALIATION

76. Eddy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. On or about May 20, 2016, Defendants terminated Eddy.

78. Defendants terminated Eddy in retaliation for Eddy's husband filing a claim for Worker's Compensation benefits.

79. Eddy was discharged without just cause for her husband filing a claim for Worker's Compensation benefits.

80. Eddy is therefore entitled to recover damages from Defendants for its wrongful discharge of her in retaliation for her husband filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

81. As a direct and proximate cause of Defendants' wrongful conduct, Eddy has suffered and will continue to suffer damages.

82. As a direct and proximate cause of the Defendants' conduct, Eddy has suffered and will continue to suffer damages.



## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

83. Eddy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

84. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating or retaliating against an employee to avoid a Workers' Compensation claim.

85. Defendants' termination of Eddy jeopardizes this public policy.

86. Defendants' termination of Eddy was motivated by conduct related to these public policies.

87. Defendants had no overriding business justification for terminating Eddy.

88. As a direct and proximate cause of Defendants' wrongful conduct, Eddy suffered and will continue to suffer damages.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89. Eddy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Defendants intended to cause Eddy emotional distress, or knew that their acts or omissions would result in serious emotional distress to Eddy.

91. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

92. As a direct and proximate cause of Defendants' acts and omissions as set forth above, Eddy has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.



The Employee's Attorney.™

93. As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Eddy has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Eddy demands from Defendants the following:

a) Issue a permanent injunction:

　　i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

　　ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

　　iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

　　iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

　　v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to restore Eddy to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

c) An award against Defendants for compensatory and monetary damages to compensate Eddy for physical injury, physical sickness, lost wages, emotional distress, and other



consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Eddy's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/Matthew G. Bruce
Matthew G. Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Ste. 200
Beachwood, Ohio 44122
Phone: (216) 291-4744 x 126
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
*Attorney for Plaintiff Christina Eddy*

## JURY DEMAND

Plaintiff Christina Eddy demands a trial by jury by the maximum number of jurors permitted.

/s/Matthew G. Bruce
Matthew G. Bruce (0083769)

